IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

_____

No. 21-0253

_____

FILED

**April 26, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

JARED M.,
Petitioner Below, Petitioner

v.

MOLLY A.,
Respondent Below, Respondent

_____

Appeal from the Circuit Court of Monongalia County
The Honorable Cindy S. Scott, Judge
Civil Action No. 13-D-528

REVERSED AND REMANDED
_____

Submitted: March 15, 2022
Filed: April 26, 2022

J. Marty Mazezka, Esq.
Charleston, West Virginia
Counsel for Petitioner

Michelle L. Bechtel, Esq.
Gianola, Barnum, Bechtel & Jecklin, L.C.
Morgantown, West Virginia

Alyson A. Dotson, Esq.
Ambler & Dotson, LC
Lewisburg, West Virginia
Counsel for Respondent

JUSTICE ARMSTEAD delivered the Opinion of the Court.

JUSTICE ALAN D. MOATS, sitting by temporary assignment.

CHIEF JUSTICE HUTCHISON and JUSTICE WOOTON dissent and reserve the right to file dissenting Opinions.

**SYLLABUS BY THE COURT**

1.      "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*."  Syl. Pt., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

**Armstead, Justice:**

The petitioner father in this matter, Jared M.,[1] filed a petition in the Family Court of Monongalia County seeking to modify a parenting plan for his daughter, E.M., due to substantial changes in circumstances. The family court denied the petition and subsequently awarded attorney fees to the respondent mother, Molly A. The Circuit Court of Monongalia County affirmed these decisions, and Jared M. filed this appeal.

Based on the record before us, the arguments of the parties, and the applicable law, we find that the family court's finding of no substantial change in circumstances was clearly erroneous; therefore, we reverse and remand this matter to the family court for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jared M. and Molly A. share a child, E.M., who was born in February 2012. In September 2013, E.M. was diagnosed with a brain tumor, which was surgically removed. Removal of the brain tumor also entailed removing E.M.'s pituitary gland, resulting in the requirement that she be administered hormone replacement medication. As a result, her caretakers must be attentive and prepared to administer medication immediately, particularly during times of illness, stress, or elevated temperatures. Otherwise her health can deteriorate rapidly in a life-threatening manner.

---

[1] In cases involving sensitive facts, we use initials to identify the parties. *See* W. Va. R. App. P. 40(e) [eff. 2010]; *see also State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

Jared M. and Molly A., who were never married, ceased cohabiting in or about December 2013, and Jared M. filed a family court petition to establish custody and a parenting plan. While the case was pending, E.M.'s brain tumor returned, and in August 2014, she underwent a radioactive implant procedure. Fortunately, the tumor has not returned.

In September 2014, when E.M. was approximately two years and eight months old, Jared M. and Molly A. signed an agreed parenting plan. The parenting plan designated Molly A. as E.M.'s custodian and primary residential parent, with Jared M. having parenting time with E.M. from Wednesday morning to Thursday evening each week and every other weekend from Friday evening to Sunday evening. This arrangement meant that Molly A. had E.M. approximately seventy percent of the time during a given two-week period. Each parent also received one week of summer vacation with the child.

At the time of the September 2014 parenting plan, Jared M. was working full-time. Molly A. was unemployed and provided full-time care. The parenting plan gave Molly A. primary responsibility for coordinating and scheduling E.M.'s weekly therapies and designated Molly A. as the "primary contact" for E.M.'s medical providers. Due to E.M.'s medical condition, the parenting plan expressly required each parent, while exercising physical custody, to "be present at all times[,]" provided that the child could be left with a grandmother. No other person was to care for E.M. without the other parent's consent, and each parent had a right to babysit whenever the other parent planned to leave

the child in a non-grandparent's care for more than four hours. The family court approved the parenting plan in November 2014.

In December 2017, Jared M. filed a petition to modify the parenting plan. He alleged that circumstances had changed substantially due to a number of factors, including: his job change, Molly A.'s joining the workforce, E.M.'s age and enrollment in kindergarten, and Molly A.'s regular use of babysitters other than grandmothers. Jared M. further alleged that his income had declined, that Molly A. had failed to notify him of a medical malpractice suit regarding E.M., and that the parenting plan was "not working as contemplated" and was "manifestly harmful to the child."[2] As a result of the changes in

---

[2] Specifically, Jared M. alleged, in part, as follows in his Petition and Motion to Modify Parenting Plan:

> 4. The parties have experienced a substantial change of circumstance as follows:
>    a. The Petitioner has changed job duties and is self-employed and his hours are more flexible to allow time for him with the minor child.
>    b. The Respondent was not employed at the time that the parties entered into the parenting plan is now employed full time for her family.
>    c. The Respondent is residing in Morgantown and the Petitioner is residing in Morgantown.
>    d. The minor child is now school age and enrolled in kindergarten at St. Francis.
>    e. The child is enrolled in private school and the parties have been sharing the cost of tuition, fees, and uniforms equally.
>    f. Respondent has regularly allowed other people besides the grandmothers to watch the minor child including, the Respondent's boyfriend, her step-father, and a

(continued . . .)

3

circumstance alleged by Jared M., he stated in his petition that "[t]he Petitioner desires the parenting plan be modified to provide the Petitioner with additional quality time given the parties' proximity to one another, the parties' employment changes, and due to the needs of the child due to her age and maturity." Accordingly, Jared M. sought, among other things, equal parenting time, a modification of child support, and a new babysitting rule that would require the parent with physical custody who was required to be absent to allow the other parent to babysit in lieu of the grandmothers.

Following extensive discovery, the family court conducted an evidentiary hearing in October 2018. The hearing lasted more than seven-and-a-half hours. Jared M.

---

babysitter that the minor child has mentioned on several occasions.

g. The Petitioner and Respondent have been equally involved in the child's medical treatment since birth and the Petitioner is well able to care for the child and has while she was in his care.

h. The Petitioner's income has decreased due to the employment change which would warrant a change in the child support.

i. It not clear due to the Respondent's securing of employment whether medical insurance is available to her at a reasonable cost through her employment. The Petitioner provides health insurance for the child despite being self-employed. He believes this issue needs to be addressed.

j. The Respondent has violated the shared decision making provisions of the parenting plan by filing a medical malpractice lawsuit related to the minor child's serious medical problems but did not tell or inform the Petition of the suit which he just happened to find. The Petitioner should have been notified and part of the litigation since the parties were jointly involved in the child's care since birth.

presented testimony from twelve witnesses, including Jared M. and Molly A., and entered 32 exhibits into evidence. Molly A. offered only one witness, the child's pediatric endocrinologist.[3] The family court denied Jared M.'s petition from the bench and later entered a written order.

The family court's January 2019 order finds no substantial change in circumstances due to E.M.'s additional three years of age,[4] Molly A.'s new job, or Jared M.'s job change. Although Molly A. "was a stay-at-home mother until the child started school[,]" the court found that Molly A.'s eventual "work outside of the home" was "anticipated" due to her "need to support herself and the child." Regarding Jared M.'s job change, the court found that Jared M. remains a "full-time independent contractor who spends time in the corporate office" and that his tax returns show he "travelled 30,000 miles in 2016 and 2017[.]" Significantly, the family court also found that Jared M. had consumed "a voluminous amount of the [c]ourt's time" and dismissed a substantial number of additional arguments raised by Jared M. The family court did, however, modify the parenting plan's babysitting rule to provide that each parent must be offered the right to care for E.M. whenever the other parent is away for more than 24 hours and to include a

---

[3] The family court heard the endocrinologist out of order and, after hearing Jared M.'s witnesses, found that no additional witnesses were necessary.

[4] The family court arrived at three years by measuring "from the entry of the current parenting plan to the filing of the Petition for Modification . . . ."

memorandum of understanding between the parties that resulted from mediation. Subject to these modifications, the parenting plan was ratified and confirmed.[5]

In January 2019, Molly A. renewed a prior motion for attorney fees, arguing that Jared M. "acted in bad faith, wantonly[,] and for oppressive reasons."[6] After a further hearing, the family court entered a February 2019 final modification order awarding Molly A. $5,000 in attorney fees. The family court explained that "it should have been clear to . . . [Jared M.] that there was no substantial change in circumstances to warrant a modification of the parenting plan . . . ."

Jared M. separately appealed both orders to circuit court, and after consolidating the appeals, the circuit court affirmed the family court's orders ratifying and confirming the parenting plan and awarding Molly A. attorney fees in a February 26, 2021 order.[7] According to the circuit court order, though the parenting plan made no provision

_____

[5] The family court order also memorialized the parties' agreement to add Molly A.'s boyfriend, Jared M.'s girlfriend, and Molly A.'s stepfather to the list of approved babysitters.

[6] *See* Syl. Pt. 3, *Sally-Mike Properties v. Yokum*, 179 W. Va. 48, 365 S.E.2d 246 (1986) ("There is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as 'costs,' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons.").

[7] The circuit court entered a cursory order affirming the family court in August 2019. On appeal, we reversed the circuit court and remanded the case for a proper order to be entered. *See Jared M. v. Molly A.*, No. 19-0764, 2020 WL 7233165, *1 (W. Va. Dec. 7, 2020) (memorandum decision) ("[I]n the order on appeal, the circuit court failed to set forth findings of fact and conclusions of law sufficient to allow meaningful appellate review. We, therefore, reverse the circuit court's August 1, 2019, order and remand the case to the circuit court with instructions to draft a new order setting forth findings of fact and conclusions of law sufficient for meaningful appellate review.").

for changes in employment, neither the parents' new jobs nor "the various other changes that have taken place" are "significant enough" to warrant a modification. Regarding counsel fees, the circuit court merely recited the family court's findings and upheld the award of counsel fees without further analysis.

Jared M. appeals from the circuit court's February 26, 2021 order.

## II. STANDARD OF REVIEW

In this appeal, Jared M. challenges a circuit court order that affirms a family court final modification order. We have held that

> [i]n reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*

Syl. Pt., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004). With this standard of review in mind, we will consider Jared M.'s appeal.

## III. ANALYSIS

Jared M. raises three assignments of error. He contends (a) that the family court erred by failing to find a substantial change in circumstances, (b) that the family court erred by failing to make any findings regarding E.M.'s best interests, and (c) that the family

7

court erred by awarding attorney fees to Molly A.[8]  Jared M. claims, in particular, that E.M.'s advancement in age and maturity, Molly A.'s entry into the workforce, and his own job change—whether these changes are considered alone or in combination—demonstrate that a substantial change in circumstances has occurred for purposes of the modification statute.[9]  Molly A. denies these claims, but after careful review, we agree with Jared M. that a substantial change in circumstances has occurred.

### A. Modification Based on a Substantial Change in Circumstances.

The applicable provision of the West Virginia Code provides that:

> [e]xcept as provided in section 9-402 [§ 48-9-402] or 9-403 [§ 48-9-403], a court shall modify a parenting plan order if it finds, *on the basis of facts that were not known or have arisen since the entry of the prior order and were not anticipated therein*, that *a substantial change* has occurred *in the circumstances of the child or of one or both parents* and a modification is necessary to serve the best interests of the child.

---

[8] Jared M.'s assignments of error improperly focus on the circuit court.  *See Carr* at 475, 607 S.E.2d at 804, syl. pt. ("In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge*, we review the findings of fact made by the family court judge* under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." (emphasis added)).  Accordingly, we have considered his assignments of error to address alleged errors at the family court level.

[9] Jared M. also contends that E.M.'s "drastic improvement in her medical condition" and her changed "needs" operate "in conjunction with her advancement in age and maturity" to compose a substantial change in circumstances.  Jared M. did not specifically cite E.M.'s improved medical condition as a distinct basis for relief in his petition before the family court.  Nevertheless, because E.M.'s medical condition provides inseparable context for the parenting plan, and Jared M. requested modification of the parenting plan "due to the *needs* of the child due to her age and maturity[,]" (emphasis added), we deem it appropriate to consider E.M.'s medical condition in connection with Jared M.'s other alleged changes in circumstances.

W. Va. Code § 48-9-401(a) (eff. 2001) (emphasis added). Thus, the statute establishes three criteria for change-in-circumstances modifications. *First*, the facts relevant to the change in circumstances must not have been "known" or "anticipated" in the order that established the parenting plan. *Ibid. Second*, the change in circumstances, whether "of the child or of one or both parents[,]" must be "substantial[.]" *Ibid. Third*, the modification must be "necessary to serve the best interests of the child." *Ibid.*

**B. Changes Not Anticipated in the Parenting Plan.**

Jared M.'s petition to the family court identified his own job change, Molly A.'s entry to the workforce, and E.M.'s increased age and enrollment in kindergarten as changed circumstances, yet the family court order only addressed whether Molly A.'s new employment was anticipated.[10] On this point, the family court found that "[i]t was anticipated that . . . [Molly A.] would begin to work outside of the home in the future *because* she would need to support herself and the child." (Emphasis added.) According to the family court, Jared M. and Molly A.'s father "could not be expected" to "support [her] the rest of her life."

Regardless of whether these assumptions about Molly A.'s eventual need for employment ultimately proved to be correct, such assumptions were not addressed in the original parenting plan. "[U]nder the plain meaning of the statute, the relevant question is not whether a particular change in circumstance *could* have been anticipated, but whether

---

[10] The family court appears to have determined that no analysis was necessary because Jared M.'s job change and E.M.'s increased age were not "significant[.]"

the parenting plan actually did anticipate, and provide accommodation for, the particular change." *Skidmore v. Rogers*, 229 W. Va. 13, 21, 725 S.E.2d 182, 190 (2011). "The phrase 'not anticipated therein' does not mean that the change in circumstance could not have been anticipated generally, but rather that the parenting plan order does not make provisions for such a change." *Ibid.* Indeed, we have stated that "[w]hether . . . a change in circumstance could have been anticipated when the original parenting plan order was entered is of no consequence." *Ibid.*

In this case, the parenting plan sought to be modified makes no provision for the changes in circumstances identified by Jared M. It does not say, for example, what happens if Jared M. acquires a new job that affords him more (or less) flexibility to care for E.M. Nor does it say what happens if Molly A. begins working outside the home. The parenting plan is silent on these matters despite allocating to Molly A. primary responsibility for the "coordination and scheduling of the child's *weekly* therapies." (Emphasis added.) Similarly, the parenting plan does suggest that adjustments will occur at any stage of E.M.'s life.[11] Accordingly, we find that the parenting plan did not provide

---

[11] We note that the parenting plan contains boilerplate language about such things as unexpected days home from school, communication regarding educational needs and performance, equal access to educational records, and cooperation regarding school and social commitments. However, the parenting plan also contains the following detailed language, crafted by the parties for their unique circumstances:

> Due to the child's medical condition, the parent in whose physical custody the child is in *shall be present at all times*. The first baby sitter rule shall apply. However, the child

(continued . . .)

10

for Jared M.'s job change, Molly A.'s entry to the workforce, or E.M.'s increased age and maturity. Accordingly, such changes were not "anticipated" in the parenting plan as that term is used in W. Va. Code § 48-9-401(a).

### C. Changes Alleged Were Substantial.

Because we find that these changes were not "anticipated" in the parenting plan, the question becomes whether these changes amount to "a *substantial* change . . . in the circumstances of the child or of one or both parents . . . ." *Ibid.* We find that a substantial change in circumstances has occurred.

Any analysis of the parties' circumstances must begin with E.M.'s unique health conditions and history. When the parties signed the parenting plan in September 2014, only a year had passed since E.M. had experienced life-altering surgery for a brain tumor. In August 2014—the month before the parties signed the parenting plan—E.M.'s brain tumor had returned, and a radioactive implant had been utilized. In the years since then, however, E.M.'s brain tumor has not recurred. Though she remains "medically

---

may be left in the physical care and custody of the *child's maternal grandmother, paternal grandmother, or step-grandmother* . . . , without notice to the other party. The other party must be contacted to care for the child if either parent will be absent from the child for a period of more than four (4) hours, unless the child is left in the physical care and custody of *the child's maternal grandmother, paternal grandmother or step-grandmother*. The parties expressly agree that *no other person shall provide care for the child, other than her grandmothers, without the approval of the other parent.*

(Emphasis added.)

fragile" and requires attentive and informed caregivers, in the words of her doctor, she "does well and looks completely normal when she is healthy, *which she usually is*[.]" (Emphasis added.) As a result, E.M. is able to participate in ordinary childhood activities like boating and swimming and going to school, the beach, or a football game.

E.M.'s medical history lends particular significance to the fact that E.M. was less than three years old when the parties agreed to the parenting plan. As we have previously observed, "children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults . . . ." Syl. Pt. 1, in part, *In re R. J. M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980). Close interaction and full commitment were particularly vital for E.M. because her medical conditions required careful monitoring and because, as a two-year-old, she would not likely have had the verbal skills, or perhaps even the self-awareness, to communicate how she was feeling—at least not to the same degree as a school-aged child. Though only four years had passed between the 2014 signing of the parenting plan and the 2018 evidentiary hearing before the family court, those were consequential years for E.M. She began those four years as a toddler and emerged from them as a first-grader. Certainly, "the advance in a child's age will [not] necessarily constitute a basis for a modification of a parenting plan order in all cases." *Skidmore* at 22 n.3, 725 S.E.2d at 191 n.3. This "is a case specific question . . . ." *Ibid.* However, we find that on *these* facts, and for *this* child, four years of time and childhood development, combined with the improvement in her medical condition, represented "a substantial change . . . in the circumstances of the child" for purposes of West Virginia

12

Code § 48-9-401(a) and that the family court committed clear error when it determined otherwise.

For similar reasons, we believe that Molly A.'s transition from stay-at-home mother to an employee who travels out-of-town to work, and occasionally for work, also represents a substantial change in circumstances. In 2014, E.M.'s tender age and fragile health made it logical for the parties to allocate the vast majority of parenting time to the parent who could devote her full time and attention to the child and to severely limit the identity of persons who could care for the child in either parent's absence. Plainly, this arrangement was in E.M.'s best interest. According to E.M.'s doctor, Molly A. is

> an extremely careful and conscientious mother, who is attuned to the needs of her child, and is able to detect even subtle changes in her behavior, which may herald an impending illness. Thanks to the constant interaction with [E.M.] for the last few years, and the close attention she has paid to [E.M.]'s behavior and reactions to sickness, Ms. [A.] has developed the expertise and the unique ability to recognize [E.M.]'s clinical deterioration at a very early stage of an illness, which has been and is an invaluable asset in the care of her daughter.

Molly A.'s special competence as a caregiver, while extremely important to the well-being of E.M., became less relevant when E.M. began school and Molly A. accepted employment at her father's company. Now, instead of spending her day caring for E.M., Molly A. commutes to work from Morgantown to Bridgeport and attends to matters relevant to her job. On at least one occasion, she has even traveled overseas for her work. Thus, while the evidence reflects that Molly A. gives E.M. significant care and attention, E.M. no longer receives her mother's care on a full-time basis in the same manner

13

that she did before E.M. started school and Molly A. began working full-time. Indeed, such close attention from her mother (or a grandmother) no longer seems necessary to the same degree due to the fact that E.M. now attends school and sometimes remains at school for an extra hour of the day in an after-school program.[12] Conversely, the evidence reflected that Jared M.'s work schedule changed in a manner that allowed him more flexibility. When the parenting plan was signed, Jared M. worked three or four days per week in the office from approximately 8:00 a.m. until approximately 5:00 p.m. Now, though he continues to work full time and still goes into the office, he testified that his hours are more flexible. Indeed, his boss testified that Jared M. sets his own schedule. Additionally, the company Jared M. works for moved its headquarters to Morgantown in April 2018, which allows Jared M. to be in the vicinity of E.M.'s school, even when he is at the office. This change in circumstances related to Molly A.'s work schedule, combined with a change in the job duties and work schedule of Jared M., represent a significant change in circumstances.

Based upon on *these* facts and for *this* child, the positive and encouraging improvement to E.M.'s health and her resulting ability to attend school, combined with the

---

[12] Our discussion of this change in circumstances should not in any way be read as a negative reflection on Molly A.'s decision to work outside the home, nor are we suggesting that E.M.'s school attendance or participation in an after-school program is somehow unreasonable. *See* W. Va. Code § 48-9-401(c) ("Unless the parents have agreed otherwise, the following circumstances *do not justify* a significant modification of a parenting plan except where harm to the child is shown: . . . [c]hoice of reasonable caretaking arrangements for the child by a legal parent, including the child's placement in day care." (emphasis added)).

modifications in work schedules of both Molly A. and Jared M., constitute a substantial change in circumstances. The family court committed clear error when it found to the contrary.

### D. Best Interests of the Child and Counsel Fees.

The third question under W. Va. Code § 48-9-401(a) is whether "a modification is necessary to serve the best interests of the child." The family court never reached this stage of the analysis because it found no substantial change in circumstances.[13] Indeed, the family court awarded counsel fees to Molly A. because it found that the absence of a substantial change in circumstances "should have been clear to" Jared M. Because we find that a substantial change in circumstances has occurred, we also find that the family court erred both by failing to decide whether further modification of the parenting plan was necessary for the child's best interests and by awarding counsel fees to Molly A. Accordingly, upon remand of this matter to the circuit court, we direct the circuit court to conduct an analysis of whether the substantial change of circumstances present in this case renders a modification of the parenting plan necessary to serve the best interests of E.M., and to make appropriate findings regarding such analysis.

---

[13] As Molly A. points out, the family court made some minor modifications to the parenting plan and found that the parenting plan, "as modified above, is in the best interests of the child." Those modifications, however, were made pursuant to West Virginia Code § 48-9-402(b)(2) (eff. 2001) (authorizing "a minor modification" without showing changed circumstances). On appeal, Jared M. challenges the family court's refusal to award a change-in-circumstances modification under West Virginia Code § 48-9-401(a), which imposes its own best-interests analysis.

## IV. CONCLUSION

Based on the foregoing, we reverse the circuit court's February 26, 2021 order affirming the family court, and we remand this case to the family court for further proceedings consistent with this opinion.

Reversed and remanded.